UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Jose Alfredo Acosta Villegas aka Jose A. Acosta aka Jose Acosta, a married man,<br><br>Plaintiff,<br><br>v.<br><br>Wilmington Trust, National Association, as Successor Indenture Trustee to Citibank, N.A., as Indenture Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Notes, Series 2007-SL1, and Veripro Solutions Inc.,[1]<br><br>Defendant. | No.<br><br>**COMPLAINT TO QUIET TITLE AND FOR VIOLATIONS OF 15 USC §1692 AND RCW CHAPTERS 19.16 AND 19.86 ET SEQ.**<br><br>DEMAND FOR JURY TRIAL ON ALL CLAIMS OTHER THAN QUIET TITLE |

COMES NOW Plaintiff, Jose Alfredo Acosta Villegas aka Jose A. Acosta aka Jose Acosta ("Mr. Acosta"), a married man, by and through counsel and brings this action to Quiet Title and for damages for Defendant's violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*; the Washington State Collections Agency Act, RCW 19.16, *et seq.*; and the Washington Consumer Protection Act, RCW 19.86, *et seq.*, against Wilmington Trust, National Association, as Successor Indenture Trustee to Citibank, N.A., as Indenture Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Notes, Series 2007-SL1 and Veripro Solutions Inc. ("Veripro").

---

[1] Veripro's correspondence to the plaintiff and his counsel refer to the company as "Veripro Solutions, Inc." However, the State of Delaware corporate documents indicate Veripro is legally known as "Veripro Solutions Inc., without the comma.

COMPLAINT - 1

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

## I. JURISDICTION AND VENUE

1. Plaintiff alleges violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.

2. Plaintiff seeks relief under Chapter 7.28 RCW to quiet title to his real property located at 2624 S. Judkins St., Seattle, WA 98144.

3. Plaintiff alleges violations of the Washington State Collections Agency Act, RCW 19.16, *et seq.*, and the Washington Consumer Protection Act, RCW 19.86, *et seq*.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question), and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367(a). This Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 because there is complete diversity among the parties and the amount in dispute exceeds $75,000.

5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants conduct affairs and transact business in this District, the unlawful acts giving rise to this complaint occurred in this District, and the real property owned by Plaintiff which is the subject of this action lie within the territorial jurisdiction of the court.

## II. PARTIES

7. Plaintiff Acosta maintains his domicile in the State of New York.

8. Plaintiff Acosta owns the real property located at 2624 S. Judkins St., Seattle, WA 98144 ("the Property") which is further described legally as:

> The East half of Lot(s) 10, Block 1 RAINIER HEIGHTS, according to the plat thereof recorded in Volume 9 of Plats, page(s) 71, records of King County, Washington. Situate in the County of King, State of Washington.

9. King County refers to the real property as parcel number 713730-0052.

10. Plaintiff is a "consumer" as defined by the FDCPA, 15. U.S.C. § 1692a(3).

11. Defendant Veripro Solutions Inc. is a corporation registered in the State of Delaware that collects mortgage debts throughout the country. Veripro is a "collection agency" that regularly engages in soliciting claims for collection or collecting or attempting

COMPLAINT - 2

to collect claims owed or due or asserted to be owed or due another person as defined by RCW 19.16.100 and possesses a current out-of-state collection agency license issued by the State of Washington Department of Licensing. Veripro is believed to service the loan owned by Wilmington Trust, National Association, as Successor Indenture Trustee to Citibank, N.A., as Indenture Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Notes, Series 2007-SL1

12. Wilmington Trust, National Association, as Successor Indenture Trustee to Citibank, N.A., as Indenture Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Notes, Series 2007-SL1 (the "Trust") is believed to own the subject loan.

### III. FACTUAL ALLEGATIONS

13. On or about July 7, 2006, Mr. Acosta and his ex-partner, James W. O'Connor – who then lived together in a meretricious relationship – purchased the property with proceeds from two mortgages, including a first mortgage which is not the subject of this dispute. Decision One Mortgage Company, LLC originated a second mortgage for $66,800 secured by a deed of trust recorded against the subject real property recorded in the records of the King County Recorder as instrument 20060712002155 (the "second mortgage"). The second mortgage was for a 15-year term ending August 1, 2021.

14. In the wake of the 2008 financial crisis, Mr. Acosta and Mr. O'Connor separated.

15. Mr. Acosta and/or Mr. O'Connor made the last payment on the second mortgage on or about June 1, 2009.

16. On September 16, 2009, Mr. O'Connor filed for Chapter 7 bankruptcy. The Western District of Washington Bankruptcy Court, case 09-19534-SJS, discharged Mr. O'Connor's liabilities on December 22, 2009.

17. Mr. O'Connor quit claimed his entire interest in the real property to Mr. Acosta on June 4, 2013. Mr. Acosta recorded the quit claim deed with the King County Recorder as instrument 20160229001559 on February 29, 2016.

COMPLAINT - 3

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

18. Upon information and belief, Bank of America serviced the second mortgage until 2013. On or about September 5, 2013, Nationstar assumed servicing of the second mortgage until it transferred the servicing to Veripro Solutions, Inc. on or about March 26, 2015. Although Veripro claims Nationstar received $8.99 in payments on the account and the outstanding balance is $109,238.07, Mr. Acosta has made no payments on the account and believes Mr. O'Connor has made no payments on the second mortgage since on or about June 1, 2009.

19. Mr. Acosta has not "acknowledged" the second mortgage debt since on or about June 1, 2009.

20. On or about January 16, 2019, Jeremy Keowm, a Loss Recovery Specialist for Veripro contacted Mr. Acosta who directed Veripro to undersigned counsel Barraza. Mr. Keown emailed Mr. Acosta a third-party authorization document.

21. On May 31, 2019, counsel Barraza contacted Veripro by mail and included the third-party authorization executed by Mr. Acosta. Mr. Barraza instructed Veripro not to contact Mr. Acosta, demanded information from Veripro, and asserted the debt was time-barred.

22. Barraza again sent a cease and desist to Veripro on September 16, 2019.

23. On October 17, 2019, Veripro contacted Mr. Acosta at his New York address and Mr. O'Connor at the property address requesting more information about their attorney. The correspondence stated, in pertinent part:

> **NOTICE TO ALL CONSUMERS: THE FOLLOWING STATES REQUIRE US TO GIVE SPECIAL NOTICES NOTES TO THEIR RESIDENTS. CONSUMERS IN OTHER STATES MAY HAVE SIMILAR OR GREATER RIGHTS AND THESE STATE-SPECIFIC NOTICES DO NOT LIMIT OR RESTRICT THE RIGHTS AFFORDED BY FEDERAL LAW OR OTHER STATE LAWS.**
>
> The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency. [Veripro Solutions Inc. does not report to any credit reporting agency] In circumstances, you can renew the debt and restart the time period for the statute of limitations if you take specific actions such as making certain payment on the debt

or making a written promise to pay. Veripro Solutions, Inc. (Veripro) agrees that we will never file a lawsuit against you for the collection of this debt, it is our responsibility to make you aware of the facts stated herein. *Please be advised that this account remains secured by a lien against the property that will only be released upon full payoff, reduced payoff, through a bankruptcy with an approved lien strip order or by operation of law.* (emphasis added)

24. On October 25, 2019, Veripro contact attorney Barraza and acknowledged the representation. The correspondence stated, in pertinent part:

NOTICE TO ALL CONSUMERS: THE FOLLOWING STATES REQUIRE US TO GIVE SPECIAL NOTICES NOTES TO THEIR RESIDENTS. CONSUMERS IN OTHER STATES MAY HAVE SIMILAR OR GREATER RIGHTS AND THESE STATE-SPECIFIC NOTICES DO NOT LIMIT OR RESTRICT THE RIGHTS AFFORDED BY FEDERAL LAW OR OTHER STATE LAWS.

The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency. [Veripro Solutions Inc. does not report to any credit reporting agency] In circumstances, you can renew the debt and restart the time period for the statute of limitations if you take specific actions such as making certain payment on the debt or making a written promise to pay. Veripro Solutions, Inc. (Veripro) agrees that we will never file a lawsuit against you for the collection of this debt, it is our responsibility to make you aware of the facts stated herein. *Please be advised that this account remains secured by a lien against the property that will only be released upon full payoff, reduced payoff, through a bankruptcy with an approved lien strip order or by operation of law.* (emphasis added)

25. On November 5, 2019, Veripro Solutions, Inc. sent a letter to counsel for Mr. Acosta stating, in pertinent part, the following:

Your complaint/inquiry was forwarded to our attention requesting documentation that validates the above referenced account for the property located at: 2624 S. Judkins St, Seattle, WA 98144.

This loan was originated on 07/07/2006 in the amount of $66,800.00 The account was transferred on 03/26/2015 from the prior servicer Nationstar Mortgage LLC to Veripro Solutions, Inc., with a remaining balance due of $109,247.06. As of the date on this letter, $8.99 in payments have been received towards this account. The current outstanding balance is $109,238.07.

The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency. [Veripro Solutions Inc. does not report to any credit reporting agency] In circumstances, you can renew the debt and restart the time period for the statute of

limitations if you take specific actions such as making certain payment on the debt or making a written promise to pay. Veripro Solutions, Inc. (Veripro) agrees that we will never file a lawsuit against you for the collection of this debt, it is our responsibility to make you aware of the facts stated herein. ***Please be advised that this account remains secured with a lien that will only be removed upon an agreed settlement amount being received or the lien amount is satisfied in full by a refinance or sale of the property.*** (emphasis added).

26. Upon information and belief, Veripro never detailed how it arrived at the calculation of the outstanding balance of $109,238.07.

27. On November 19, 2019, counsel for Mr. Acosta demanded that Veripro Solutions, Inc. release the second lien.

28. On December 4, 2019, Veripro Solutions, Inc. sent a letter to counsel for Mr. Acosta stating, in pertinent part, the following:

> We are in receipt of your correspondence in which you inquired about the above referenced account.
>
> Veripro Solutions, Inc. (Veripro) is aware that this property was included in a Chapter 7 bankruptcy that was filed on 09/16/2009 with case number 09-19534 by the co-borrower on the account James O'Connor. Mr. O'Connor obtained a discharge on 12/22/2009. Veripro Solutions understands while a discharge of the personal liability to repay the debt according to the note, the bankruptcy, in of itself, did not satisfy nor discharge the obligation of the mortgage/deed of trust lien securing the property.
>
> Based upon our findings, your client Jose Acosta has not filed bankruptcy as of 12/04/2019 and therefore has not received a discharge in bankruptcy. Therefore, the cases you cite in your letter have no bearing as to the alleged acceleration of the debt in regards to your client Mr. Acosta. As such, the loan account will continue to be serviced appropriate to its status and it is Veripro's position that this account remains secured by a lien against the property that will be released upon full payoff, reduced payoff, through a bankruptcy with the appropriate Court order being entered or by operation of law. (emphasis added).
>
> Veripro understands that the law limits how long an individual can be sued on a debt. At this time Veripro has no intention of filing suit for collection of the debt or reporting the account status to any credit reporting agency…
>
> **NOTICE TO ALL CONSUMERS: THE FOLLOWING STATES REQUIRE US TO GIVE SPECIAL NOTICES NOTES TO THEIR RESIDENTS. CONSUMERS IN OTHER STATES MAY HAVE SIMILAR OR GREATER RIGHTS AND THESE STATE-SPECIFIC NOTICES DO NOT LIMIT OR**

COMPLAINT - 6

**RESTRICT THE RIGHTS AFFORDED BY FEDERAL LAW OR OTHER STATE LAWS.**

The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency. [Veripro Solutions Inc. does not report to any credit reporting agency] In circumstances, you can renew the debt and restart the time period for the statute of limitations if you take specific actions such as making certain payment on the debt or making a written promise to pay. Veripro Solutions, Inc. (Veripro) agrees that we will never file a lawsuit against you for the collection of this debt, it is our responsibility to make you aware of the facts stated herein. ***Please be advised that this account remains secured by a lien against the property that will only be released upon full payoff, reduced payoff, through a bankruptcy with an approved lien strip order or by operation of law.*** (emphasis added).

### III.   CAUSES OF ACTION

**A.   CLAIM ONE: QUIET TITLE AS TO THE TRUST**

29.   Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

30.   Wash. Rev. Code Ann. § 7.28.300 states: The record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien.

31.   Washington law states that the statute of limitations on an installment contract, such as one for mortgage payments, runs when each installment becomes due. *See Herzog v. Herzog*, 23 Wash. 2d 282, 388 (1945). In a bankruptcy context, no payments are due if the borrowers' personal liability is discharged, thus the statute of limitations begins to run with the last payment due before discharge. *Edmundson*, 194 Wash. App. at 931.

32.   Under Washington law, Wash. Rev. Code § 4.16.040 provides that "[a]n action upon a contract in writing" must be "commenced within six years." *See Edmundson v. Bank of Am.*, 194 Wash. App. 920, 927, 378 P.3d 272 (2016). In Washington, promissory notes and deeds of trust are governed by the statute of limitations imposed by Wash. Rev. Code § 4.16.040. Wash. Rev. Code 4.16.040(1); *Westar Funding, Inc. v. Sorrels*, 157 Wash. App.

777, 784–85, 239 P.3d 1109 (2010). In *Walcker v. Benson and McLaughlin, P.S.*, 79 Wash. App. 739, (1995), the court held that the legislature intended to apply Wash. Rev. Code § 4.16.040 when it stated in Wash. Rev. Code § 61.24.020 that "[e]xcept as provided in this chapter, a deed of trust is subject to all laws relating to mortgages on real property." *Walcker*, 79 Wash. App. at 743–44. The "sole issue" in *Walcker* was "whether the right of nonjudicial foreclosure of a deed of trust extends beyond the limitation period for enforcement of the underlying debt." *Id*. at 741.

33. Because the Washington Deeds of Trust Act ("DTA"), Wash. Rev. Code § 61.24, is otherwise silent on the statute of limitations for non-judicial foreclosures., the court in *Walcker* found that when the statute of limitations on the right to enforce a promissory note expires, the right to enforce a deed of trust securing the note also expires. *Id*. at 740–41. For installment agreements, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Edmundson*, 194 Wash. App. at 929 (*quoting Herzog v. Herzog*, 161 P.2d 142, 144–45, 23 Wash.2d 382 (1945)). The final six-year period to foreclose runs from the time the final installment becomes due. *See 4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 6 (Wash. Ct. App. 2016). This occurs upon the last installment due before discharge of the borrower's personal liability on the associated note. *See Edmundson*, 378 P.3d at 278. In the present case, installment payments were due until Mr. O'Connor received his discharge on December 22, 2009. The discharge eliminated the personal liability of O'Connor on both the Note and Deed of Trust, but did not affect Bank of America's rights to enforce the Deed of Trust *in-rem*. *In re Henry*, 266 B.R. 457, 474 (Bankr. C.D. Cal. 2001). So, after discharge O'Connor owed no further installments on the Note or Deed of Trust. Because no further installments were owing, no further payments could be said to be "due." Based on the reasoning in *Herzog*, that the last statute of limitations (as opposed to just the statute of limitations on one installment) begins to run when the last installment payment is due, the statute of limitations on the entire obligation secured by the Deed of Trust began to run when

the last monthly installment payment was due and unpaid on the Note prior to the date of discharge, December 22, 2009. This issue was directly addressed in *Edmundson*.

34. The Plaintiffs in Edmundson did not make the November 1, 2008, monthly installment payment on a note and deed of trust or any payments thereafter. *Id*. at 923. They filed Chapter 13 Bankruptcy in June 2008 and received a discharge on December 31, 2013. *Id*. at 923. In March 2015, Plaintiffs sought to enjoin a scheduled trustee's sale of the property under the deed of trust, arguing inter alia that the six-year statute of limitations had run on November 1, 2014, six years after their initial default. *Id*. at 924. The court of appeals stated:

> Here, the statute of limitations accrued for each installment from the time it became due. Thus, the statute accrued on November 1, 2008 for that missed payment only. November 1, 2014 was six years later. Correspondingly, the statute of limitations for each subsequent monthly payment accrued on the first day of each month after November 1, 2008 until the Edmundsons no longer had personal liability under the note. They no longer had such liability as of the date of their bankruptcy discharge, December 31, 2013. Thus, from December 1, 2008 through December 1, 2013, the statute of limitations accrued for each monthly payment under the terms of the note as each payment became due. *Id*. at 931.

35. Veripro's correspondence dated December 4, 2019 acknowledges that Mr. O'Connor's discharge eliminated his liability under the note and implicitly accepts that the statute of limitations began to run as to the deed of trust on December 1, 2009. Yet Veripro insists that the statute of limitations did not begin to run as to Mr. Acosta. It is Mr. Acosta's position that Veripro cannot have it both ways and argue that it is barred from foreclosing on Mr. O'Connor's deed of trust but it can foreclose the same deed of trust signed by Mr. Acosta.

36. Veripro informed Mr. Acosta and his counsel on at least four occasions that "we will never file a lawsuit against you for the collection of this debt."

37. On October 17 and October 25, 2019, Veripro insisted that "this account remains secured by a lien against the property that will only be released upon full payoff, reduced payoff, through a bankruptcy with an approved lien strip order or by operation of law." On November 5, 2019, Veripro stated that "this account remains secured with a lien

that will only be removed upon an agreed settlement amount being received or the lien amount is satisfied in full by a refinance or sale of the property."

38. On December 4, 2019, Veripro, in the same letter, stated that "this account remains secured by a lien against the property that will be released upon full payoff, reduced payoff, through a bankruptcy with the appropriate Court order being entered or by operation of law" AND "this account remains secured by a lien against the property that will only be released upon full payoff, reduced payoff, through a bankruptcy with an approved lien strip order or by operation of law."

39. While Veripro insists it can collect the debt against Mr. Acosta, it states it will never do so. Moreover, while Veripro insists that it possess a valid lien on the real property, it acknowledges that its lien can be eliminated by operation of law. Mr. Acosta faces two choices to quiet title: give in to an extortionate demand and pay the time-barred debt or sue.

40. For the foregoing reasons, Mr. Acosta humbly asks that the Court quiet title to his real property by ordering Veripro Solutions Inc. to reconvey the deed of trust recorded against the subject real property recorded in the records of the King County Recorder as instrument 20060712002155 (the "second mortgage").

### IV.  CLAIM TWO: LACHES

41. Plaintiff repeats and realleges and incorporate by reference the foregoing paragraphs.

42. Washington law provides that undue delay in pursuing a claim can bar recovery. *See Cedar West Owners Ass'n v. Nationstar Mortg., LLC*, 7 Wn. App. 2d 473, 489 (2019). Specifically, lenders "must act diligently to pursue and perfect nonjudicial foreclosure remedies" under the Deeds of Trust Act once they have transmitted a notice of default to a borrower. *Id*.

43. The doctrine of laches is controlled by state law. *See Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949). The purpose of laches is to prevent injustice and hardship. *Johnson v. Schultz*, 137 Wn. 584, 589 (1926) (quotation omitted). The application

of laches depends on the particular facts and circumstances of each case. *Lopp v. Peninsula Sch. Dist. No. 401*, 90 Wn.2d 754, 759 (1978). Accordingly, Washington courts have applied laches despite an applicable statute of limitations when a "special reason is shown why a shorter period should be enforced," or "some controlling equity" applies, or the facts present "highly unusual circumstances." *See Auve v. Wenzlaff*, 162 Wn. 368, 374 (1931); *Roger v. Whitham*, 56 Wn. 190, 195 (1909); *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375 (1984). The facts presented in this case constitute highly unusual circumstances and the controlling equities should compel this court to apply laches to bar Veripro's claim. In Washington, the elements of laches are (1) knowledge or reasonable opportunity for discovery of the cause of action, (2) an unreasonable delay in commencing the action, and (3) damage resulting from the unreasonable delay. *Lopp*, 90 Wn.2d at 759.

44. Washington law on laches is consistent with federal law and the laws of other states. *See, e.g., Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) (reciting the two elements of laches as (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed. 1995) ("[L]aches does not result from a mere lapse in time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced.").

**Knowledge or Reasonable Opportunity for Discovery of the Cause of Action.**

45. More than five years have elapsed since the previous loan servicer assigned the account to Veripro and Veripro has done nothing to enforce its purported lien rights on an account for which it knows no payment has been tendered since on or about June 1, 2009. Accordingly, Veripro – and its predecessors - had a reasonable opportunity (more than ten years) to pursue a cause of action on the second mortgage but did not take any action to enforce its rights.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

//
//
//

**Unreasonable Delay in Commencing the Action**

46. Veripro knows that the bankruptcy court discharged Mr. O'Connor more than nine years ago yet has taken no action to enforce its rights. Moreover, Veripro informed Mr. Acosta that it will not take any legal action against him. Instead, Veripro's correspondence makes it crystal clear that it intends to sit back and do nothing hoping that Mr. Acosta: (1) acknowledges the debt by offering to settle or paying and restarting the statute of limitations, (2) refinance, or (3) sell the home. It is unreasonable on its face for Veripro to refuse to act more than ten years after default.

**Damages Resulting from the Unreasonable Delay**

47. Mr. Acosta is prejudiced by Veripro's unreasonable delay because he has incurred costs to hire an attorney to investigate the matter and demand reconveyance on a time-barred debt. Mr. Acosta is damaged no matter what he does because he either must pay money to sue to quiet title or capitulate to Veripro's extortionate demands and risk refreshing the statute of limitations. Moreover, Mr. Acosta is not even sure how Veripro arrived at the claimed balance due of $109,238.07 on a debt with an original principal balance of $66,800.

## V. CONSUMER PROTECTION ACT CLAIMS

48. Plaintiff repeats and realleges and incorporate by reference the foregoing paragraphs.

49. Under Washington's Consumer Protection Act ("CPA"), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." RCW 19.86.020. Any person injured in his or her business or property by a CPA violation may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages. RCW 19.86.090. To prevail on a CPA claim, the plaintiff must show: "'(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public

interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 115, 285 P.3d 34 (2012) (qu*oting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986)).

50. A person commits a per se unfair or deceptive act or practice in trade or commerce when she violates a statutory prohibition expressly identified by the Legislature as an unfair or deceptive act in trade or commerce. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-86, 719 P.2d 531 (1986) (A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated). Per se violations of the CPA mean that the consumer satisfies the first three prongs of the CPA, namely that an unfair or deceptive act or practice occurred in trade or commerce in contravention of the public interest.

51. In the absence of a per se unfair or deceptive act or practice in trade or commerce, the plaintiff must prove conduct "unfair" or "deceptive" on a case-by-case basis. *Rush v. Blackburn*, 190 Wn. App. 945, 962, 361 P. 3d 217, (2015) *citing Hangman Ridge*, 105 Wn.2d at 786, 719 P.2d 531; *accord Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 785-87, 295 P.3d 1179 (2013). Neither intent nor actual deception must be proven to prove an act or practice unfair or deceptive. *State v. Kaiser*, 161 Wn.App. 705, 719, 254 P.3d 850 (2011). Instead, the "question is whether the conduct has 'the capacity to deceive a substantial portion of the public.'… 'Whether particular actions are deceptive is a question of law…'" *Id*. (internal citations omitted).

52. In *Klem v Wash Mut. Bank*, the Supreme Court held: [A] claim under the Washington CPA may be predicated upon…an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest. *Klem v Wash Mut. Bank*, 176 Wn.2d at 787, 295

P.3d 1179 (holding a CPA injury was pleaded where a falsely backdated notarization allowed a foreclosure sale to happen earlier than it could have otherwise).

53.     The Consumer Protection Act defines "trade" and "commerce" to "include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). Here, it cannot be disputed that the actions of the defendant to service and collect the Acosta account constitutes activity in trade and commerce.

54.     With respect to the public interest prong of the CPA, a claimant may establish that the act or practice is injurious to the public interest because it violates a statute that incorporates the Consumer Protection Act. RCW 19.86.093(1). Similarly, a claimant may establish that the act or practice is injurious to the public interest because it violates a statute which contains a specific legislative declaration of public interest impact. RCW 19.86.093(2). Alternatively, an unfair or deceptive practice or act may violate the public interest it if: (a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons. RCW 19.86.093(3).

55.     To prove violations of the Consumer Protection Act, a Plaintiff must always prove injury and causation even when she proves an unfair or deceptive act or practice occurs in trade or commerce in contravention of the public interest. *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn.App. 294, 317, 308 P.3d 716 (2013) ([t]he failure to establish any of these elements is fatal to a CPA claim).

56.     Compensable injuries under the CPA are limited to "injury to [the] plaintiff in his or her business or property." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The range of business and property injuries compensable under the CPA is relatively expansive. *Frias v. Asset Foreclosure Services, Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014) (plaintiff entitled to prove and recover expenses incurred in investigating the legality of a nonjudicial foreclosure, and expenses incurred in participating in an unnecessary mediation session); *Walker v. Quality Loan*

*Service Corp.*, 176 Wn.App. at 320 (Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA); *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 57, 62, 204 P.3d 885 (2009) (Expenses incurred in "consulting an attorney to dispel uncertainty regarding an alleged debt" held to be "injury to business or property").

57. Demanding amounts from a homeowner that are not owed - which would include all costs of a foreclosure that was wrongfully initiated - constitute an "injury" under the CPA. *Frias*, 181 Wn.2d at 432. The Supreme Court found that a borrower could suffer an injury based upon "unlawful debt collection practices, even when there is no dispute as to the validity of the underlying debt." *Frias*, 181 Wn.2d at 431 *citing to Panag v. State Farm Ins. Co. of WA*, 166 Wn.2d 27, 55-56, n. 13 (2009). There is no requirement that a borrower pay to establish injury. *Panag*, 166 Wn.2d at 59-60.

58. "To prove causation, the 'plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.'" *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn.App. 294, 319, 308 P.3d 716 (2013).

## VI.   CLAIM THREE: VERIPRO VIOLATED THE CONSUMER PROTECTION ACT BY FAILING TO PROVIDE REQUIRED INFORMATION TO THE PLAINTIFF

59. Plaintiff repeats and realleges and incorporate by reference the foregoing paragraphs.

60. With respect to the alleged debt, Plaintiff is a "debtor" as defined by RCW 19.16.100(7).

61. With respect to the alleged debt, Defendant Veripro is a collection agency as defined by RCW 19.16.100(4).

62. Because RCW Chapter 19.16 is enforced through RCW 19.86 et seq the below counts alleging violations of RCW Chapter 19.16 are therefore CPA violations.

63. Washington's legislature expects debt buyers to identify themselves and their relationship to the original creditor, and to itemize their claims when communicating with consumers, especially for the first time. Indeed, it is a fundamental tenant of Anglo-Saxon law that the adversarial system cannot function unless a party demanding payment of a debt prove up its identity and relationship to its claim.

64. Veripro committed a per se violation of the Consumer Protection Act because it failed to comply with RCW 19.16.250(9) which required it to convey the correspondence required by RCW 19.16.250(8)(c) detailing the original amount owing on the original obligation, the interest, costs and charged added to the original obligation by the original creditor, the interest and charges added by Veripro, collection costs, attorneys' fees, and any other charges purportedly owned.

65. Veripro's per se violations of the Collection Agency Act at RCW 19.16.250(8) and/or RCW 19.16.250(9) bar it from collecting interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on such debt under RCW 19.16.450.

66. To the extent that this conduct does not constitute a per se violation of the CPA, it otherwise violates the CPA.

67. Demanding amounts not owed from a consumer violates the Consumer Protection Act even absent payment of the disputed amounts. But for Veripro's failures, Mr. Acosta would not have incurred attorney's fees and costs to investigate Veripro's identity, relationship to the original creditor, and to obtain an accurate accounting of the disputed debt.

## VII.  CLAIM FOUR: VERIPRO VIOLATED THE CONSUMER PROTECTION ACT BY ESSENTIALLY EXTORTING MONEY FROM MR. ACOSTA

68. Plaintiff repeats and realleges and incorporate by reference the foregoing paragraphs.

69. It is an unfair or deceptive practice to inform Mr. Acosta that "we will never file a lawsuit against you for the collection" of a purported debt but refuse to take any action to enforce the creditor's rights other than make confusing and varying demands that the homeowner pay in full, offer an acceptable reduced payoff, file bankruptcy and obtain an approved lien strip order or "appropriate Court order," enter into an agreed settlement, refinance, or sell while simultaneously acknowledging that the lien can be rendered moot by operation of law. Here, the deed of trust has been rendered unenforceable by operation of law yet Veripro refused to release the lien when counsel for Mr. Acosta requested that it do so. Instead, Veripro engages in an inherently unfair or deceptive practice or act because it presents Mr. Acosta with two choices to quiet title: give in to an extortionate demand and pay the time-barred debt or sue.

## VIII.   CLAIM FIVE: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

70. Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

71. The Fair Debt Collection Practices Act prohibits debt collectors such as Veripro from using unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. Unfair or unconscionable means include, but are not limited to, taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest if there is no present intention to take possession of the property; or the property is exempt by law from such dispossession or disablement. 15 U.S.C. § 1692f(6)(A)-(C).

72. Veripro uses unfair or unconscionable means to collect the second mortgage in violation of the Fair Debt Collection Practices Act because it informed Mr. Acosta that "we will never file a lawsuit against you for the collection" while simultaneously demanding that he pay in full, offer an acceptable reduced payoff, file bankruptcy and obtain an approved

lien strip order or "appropriate Court order," enter into an agreed settlement, refinance, or sell while contemporaneously acknowledging that the lien may already be void by operation of law. Here, the deed of trust has been rendered unenforceable by operation of law yet Veripro refused to release the lien when counsel for Mr. Acosta requested that it do so. Instead, Veripro engages in an inherently unfair or unconscionable practice or act because it presents Mr. Acosta with two choices to quiet title: give in to an extortionate demand and pay the time-barred debt or sue.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

1) For declaratory relief quieting title and ordering Veripro Solutions Inc. reconvey the deed of trust recorded against Mr. Acosta's real property recorded in the records of the King County Recorder as instrument 20060712002155.

2) For judgment against Defendants for actual damages.

3) For treble damages, pursuant to RCW 19.86.090, calculated from the damages determined by the court.

4) For costs and reasonable attorney's fees as determined by the Court pursuant to RCW 19.86 et seq.

5) Plaintiff reserves his request for injunctive relief pursuant to RCW 19.86.090.

6) For interest on the above amounts as authorized by law;

7) For other relief as the Court deems just and equitable;

8) For leave to amend this complaint as needed and as required; and

9) The Plaintiff also requests a jury trial on all FDCPA and Consumer Protection Act claims.

Respectfully submitted this 17th day of April 2020

BARRAZA LAW, PLLC

*/s/ V. Omar Barraza*
V. Omar Barraza, WSBA #43589
10728 16th Avenue SW
Seattle, Washington 98146
omar@barrazalaw.com
Tel.: (206) 933-7861
Fax.: (206) 933-7863

HENRY & DEGRAAFF, PS

*/s/ Christina L. Henry*
Christina L. Henry, WSBA #31272
787 Maynard Avenue South
Seattle, Washington 98104
chenry@hdm-legal.com
Tel.: (206) 330-0595
Fax: (206) 400-7609